68336, 68499. THE STATE v. STRICKMAN; and vice versa.

(325 SE2d 775)

Pope, Judge.

The State appeals from the trial court's grant of defendant Andrew Perry Strickman's motion in limine. Said order ruled inadmissible "all evidence of any state-administered intoximeter test on the Intoximeter 3000 given Defendant in this action." Defendant cross-appeals from the trial court's denial of his motion to dismiss the State's appeal. *Held*:

1. The issue raised by defendant's cross-appeal was certified to the Supreme Court and resolved adversely to him. *State v. Strickman*, 253 Ga. 287 (319 SE2d 864) (1984).

2. As to the trial court's grant of defendant's motion in limine, the pertinent facts of record, as stipulated by the parties, show the following. Defendant was stopped by an officer of the DeKalb County Police Department on May 29, 1983 for operating a motor vehicle on a public road left of the centerline. Upon questioning defendant, the police officer observed what he considered to be signs of intoxication. In the terms of the police report, the officer then read defendant the Implied Consent Warning at the arrest location. Defendant stated that he understood and consented to take a breath test designated by the officer. Defendant was transported to the DeKalb County Department of Public Safety and again read the Implied Consent Warning in the presence of the intoximeter technician. Defendant agreed to submit to the state-administered breath test. The results of the intox-

imeter test indicated a blood alcohol level in excess of that permitted by statute. Defendant was arrested and charged with the offense of driving with ability impaired by alcohol.

The state-administered intoximeter test was performed on an Intoximeter 3000 which was the only intoximeter then being used at the DeKalb County Department of Public Safety for the purpose for state-administered intoximeter tests. No other chemical test was performed on defendant for the purpose of determining the alcohol content of his blood. The Intoximeter 3000 is an intoximeter different in design and operation from the Photo-Electric Intoximeter (Model 300 or 400), the Auto-Intoximeter and the GC Intoximeter (Mark IV or IVA), all specifically approved for use in this state by Department of Public Safety (DPS) Rule 570-9-.06 (5), and is not an instrument for an original screening test. The design of the Intoximeter 3000, a breath alcohol analyzer, was not specifically approved by DPS Rule 570-9-.06 (5) at the time defendant was tested on that machine. However, this rule also provided: "The Director of the State Crime Laboratory will approve the design of any other type of breath alcohol analyzer used in this State, not already specifically approved under this Rule."

By letter dated February 17, 1982 Dr. Larry Howard, in his official capacity as Director of the Division of Forensic Sciences (formerly the State Crime Laboratory), approved the use of the Intoximeter 3000 by the DeKalb County Police Department with certain restrictions and limitations not here relevant. By letter also dated February 17, 1982 Dr. Howard notified Intoximeters, Inc., the manufacturer of the Intoximeter 3000, that the machine was approved for use solely by the DeKalb County Police Department in the State of Georgia.

The intoximeter analyst conducting the test on the Intoximeter 3000 in the instant case had a permit in his possession issued by the Director of the Division of Forensic Sciences, complying with pertinent DPS rules authorizing him to conduct intoximeter tests on the Intoximeter 3000 at the time the subject test was performed. Said permit was displayed in a conspicuous site near the Intoximeter 3000 and in a position such that it was reasonably calculated to be readily seen. The DeKalb County Department of Public Safety displayed near the site of the subject test a letter dated January 18, 1983 by Dr. Howard approving the Intoximeter 3000 for use throughout the State of Georgia. However, the amendment to DPS Rule 570-9-.06 (5) specifically including the Intoximeter 3000 as an approved breath alcohol analyzer for general use statewide was not effective until June 26, 1983.

On the basis of the foregoing facts, the trial court granted defendant's motion in limine, concluding that at the time of defendant's

test on the Intoximeter 3000, approval of the use of said machine was not in accordance with the Administrative Procedure Act (APA). As noted above, Rule 570-9-.06 (5) gives the Director of the State Crime Laboratory (now the Division of Forensic Sciences) the authority to approve the design of any breath alcohol analyzer used in this state and not already specifically approved by the rule. The trial court reasoned that this portion of the rule did not relieve the Director from compliance with the notice requirements of the APA, OCGA Ch. 50-13. In other words, the court concluded that the Director was not empowered to approve the use of the Intoximeter 3000 until Rule 570-9-.06 (5) had been amended in compliance with the APA to specifically include the Intoximeter 3000 as an approved breath alcohol analyzer. We find the trial court's analysis unpersuasive.

The APA defines "rule" as an "agency regulation, standard or statement *of general applicability* that implements, interprets, or prescribes law or policy. . . ." (Emphasis supplied.) OCGA § 50-13-2 (6). Only such "rules" are governed by the APA. See OCGA § 50-13-4. Rule 570-9-.06 (5) was promulgated to implement OCGA § 40-6-392 (a). Under this Code section evidence of the amount of alcohol in a person's blood at the time of his arrest, as determined by a chemical analysis of, inter alia, his breath, is admissible in a criminal trial arising from a charge of driving under the influence of alcohol. Subsection (1) of this Code section provides: "Chemical analysis of the person's . . . breath . . ., to be considered valid under this Code section, shall have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose." At the time defendant was tested, Rule 570-9-.06 (5) specifically named several breath alcohol analyzers as approved for use throughout the state. The rule also provided that the use of any other such machine must first be approved by the Director of the State Crime Laboratory. Clearly, the rule as promulgated at the time in question was fully in accord with the mandate of OCGA § 40-6-392 (a) (1). It is equally clear that the Director's approval of the Intoximeter 3000 for use solely in DeKalb County was not an agency regulation "of general applicability" so as to require formal amendment of the rule in accordance with the APA. We note in passing that Rule 570-9-.06 (5) was amended in accordance with the procedural requirements of the APA upon the Director's approval of the Intoximeter 3000 for use throughout the state. The record thus compels the conclusion that the procedural requirements of the APA are not pertinent to the breath test conducted on defendant in this case, and that said test was performed in full compliance with the mandate of OCGA § 40-6-392 (a) (1) and DPS Rule 570-9-.06 (5). See generally *Higginbotham v. State*, 170 Ga. App. 80 (316 SE2d 181)

4

(1984). Accordingly, the judgment of the trial court granting defendant's motion in limine is in error and must be reversed.

*Judgment affirmed in Case No. 68499; reversed in Case No. 68336. Banke, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 20, 1984 —
REHEARING DENIED DECEMBER 10, 1984 —

*Ralph T. Bowden, Solicitor, J. Phillip Hancock, F. Gentry Shelnutt, Assistant Solicitors,* for appellant.
*Steven T. Maples,* for appellee.