## 4054. FLAGG v. THE STATE.

1. Where demand for trial in a criminal case for an offense not affecting life is regularly allowed, the failure of the State to place the accused on trial at either the first or the second term after the demand operates as an absolute acquittal and discharge, provided qualified juries are impaneled at both terms, unless the accused has done some affirmative act which in law would amount to a waiver of his demand. Mere silence at the second term and failure to bring the demand to the court's attention will not amount to a waiver.

2. Voluntary absence from court will operate as a waiver of the demand, but involuntary absence at the second term, caused by confinement in the county chain-gang under a misdemeanor sentence imposed at the first term, is not within the exception of the statute.

3. Absence of the accused at the third term and after the failure to comply with the demand has entitled him to an acquittal is no reason for re-

fusing to sustain a motion, made at that term by his counsel, to complete the record by granting an order of discharge.

4. The courts of this State have inherent power to cause the production in court of a convict serving a penal sentence in the State penitentiary or county chain-gang, whenever his presence is needed for a lawful purpose.

5. The rule of the common law, that one attainted of a felony could not be tried for another felony, has never been of force in this State.

6. The fact that one is serving a misdemeanor sentence in a county chain-gang constitutes no reason why he can not be brought to trial and sentenced under an indictment or accusation charging another offense.

7. The plaintiff in error was entitled to his discharge, and an order to that effect should have been entered.

DECIDED APRIL 2, 1912.

Indictment for assault with intent to murder; from Baldwin superior court—Judge J. B. Park. January 11, 1912.

The exception is to the refusal to grant an order discharging and acquitting the accused on account of the failure of the State to put him on trial at the second term after his demand for trial had been allowed and entered upon the minutes of the court. The demand was made at the January term, 1911. The next July term was not convened, but was adjourned till November, at which time the accused was serving a misdemeanor sentence in the county chain-gang, but was present in court as a witness, having been brought there by the chain-gang authorities for that purpose. He was not tried at that term, and at the succeeding January term his counsel, while the accused was still absent at work in the chain-gang, moved for an order adjudging that he stand acquitted of the charge in the indictment upon which the demand for trial had been made.

*Erwin Sibley,* for plaintiff in error.

*Joseph E. Pottle, solicitor-general,* contra.

POTTLE, J. 1, 2. The constitution of this State guarantees to one accused of crime a speedy trial, and in aid of this guaranty our statute allows him to make demand for trial for an offense "not affecting his life," and requires that unless a trial be had at the first or second term after demand, the prisoner shall be discharged, provided that at both terms there are juries regularly impaneled and qualified to try him. Penal Code (1910), § 983. Under the statute the only prerequisite to a discharge after the second term is that demand shall have been made and allowed, and qualified juries impaneled; but, upon general principles, our courts have raised

another exception, namely, that the failure to try be not due to the voluntary act of the prisoner; as, for instance, voluntary absence from court, or obtaining a postponement to another term, and the like. In all such cases the prisoner will be held to have waived his demand. It has been said many times that unless the demand be waived by some affirmative act of the prisoner, the only alternative is trial or acquittal by discharge. *Nix* v. *State*, 5 *Ga. App.* 835 (63 S. E. 926) ; *Collins* v. *State*, 7 *Ga. App.* 653 (67 S. E. 847) ; *Thornton* v. *State*, 7 *Ga. App.* 752 (67 S. E. 1055) ; *Dublin* v. *State*, 126 *Ga.* 581 (55 S. E. 487), and cit.; *Walker* v. *State*, 89 *Ga.* 482 (15 S. E. 553). It is not incumbent upon the accused or his counsel to make any further motion or demand at the second term; they may sit mute. The demand having been regularly and lawfully made, the accused may thenceforward rely upon his right to a discharge if the State fails to comply by the end of the second term with the demand already made; the only duty imposed upon him being that he be not voluntarily absent from the court, and that he shall have done no other act which in law would amount to a waiver of his demand. No formal order of discharge is necessary; acquittal results automatically, by operation of law, after the adjournment of the second term. *Thornton* v. *State*, supra.

3. From this it necessarily results (and it was expressly so decided in the case just cited) that the absence of the accused after the second term, when his counsel moves for a completion of the record by an order of discharge and acquittal, is no reason for refusing to grant the order.

4-7. The judgment of the trial judge in the present case must be sustained, if at all, either upon the theory that the accused was absent by his own fault and the State was not bound to procure his presence, or upon the ground that, being in the custody of the county chain-gang authorities, serving another sentence, the court was without power to compel his attendance, put him upon trial, and impose sentence in another case, until after the expiration of the first sentence. There may be cogent reasons why there should be a statutory suspension of the demand during imprisonment under sentence in a case previously tried, but the courts can not imply an exception not warranted by the language of the statute. In no fair sense can it be said that the absence of the accused from court

while he was in the chain-gang was voluntary. His imprisonment was, of course, the result of his own misconduct, but the confinement was involuntary, and the enforced absence resulting therefrom was not the consequence of any act of the accused over which he had control.

We come, therefore, to the last point, which is the real ground upon which State's counsel seeks to uphold the judgment of the trial court. There is no statute of this State which expressly authorizes the court to take into custody and put on trial a person already serving a sentence under an indictment upon which he has previously been tried. The General Assembly enacted a statute providing machinery for bringing a convict into court to testify as a witness, but it was expressly declared that the proceeding authorized by the act should be cumulative. Penal Code (1910), §§ 1180-1184. It can not be doubted that under the court's inherent power, there is ample authority, irrespective of this statute, to procure the attendance of convicts as witnesses. At common law the writ of habeas corpus was used for this purpose, as well as to remove a prisoner from one jurisdiction to another, where his presence was needed. 3 Bl. Com. 130. When a convict is serving a penal sentence he is in the custody of the State or its authorities. In a sense he is the property of the State; his labor belongs to the State. Having forfeited his right to freedom, he is completely under the dominion and control of the State, with no rights save those which the law in its humanity may accord him. It would indeed be remarkable if the State, which has full power to reach out and bring into court one of its citizens while in the full enjoyment of his liberty, could not find a process by which one of its convicts could be brought into court for any purpose for which his presence could lawfully be required. We have not the slightest doubt of the full and complete power of the courts to adopt appropriate measures to obtain a convict's presence in any proper case.

It seems to have been the rule at common law that where one was attainted of a felony, he could not be tried again for the same or any other felony, for the reason that by the attainder the prisoner became dead in law and had forfeited all he had, so that it would have been superfluous "to endeavor to attaint him a second time." 4 Bl. Com. 337. But this doctrine is obviously

not applicable with us, and has not usually been followed in this country. Thomas *v.* People, 67 N. Y. 218; Coleman *v.* State, 35 Tex. Crim. App. 404 (33 S. W. 1083); Singleton *v.* State, 71 Miss. 782 (16 So. 295); People *v.* Flynn, 7 Utah, 378 (26 Pac. 1114). In Missouri it was held that a statute of that State required the enforcement of the common-law rule. State *v.* Buck, 120 Mo. 479 (25 S. W. 573).

The courts of this State have power to adjudge that one sentence shall begin at the expiration of another, previously imposed at the same term. Here the prisoner was serving a misdemeanor sentence. If he had been tried for the felony and convicted, the court would have had power to provide that the sentence in the felony case should begin at the expiration of the misdemeanor sentence. Whether any part of the latter sentence imposed at a previous term could have been extinguished by being merged into the felony sentence, we need not inquire, but at any rate such a merger would afford the prisoner no ground for complaint.

The accused was serving a sentence imposed by the judge of the court in which the felony indictment was pending. Both the court and the prosecuting attorney were bound to know of this sentence. The attorney for the accused was under no duty to call the court's attention to the fact of his imprisonment. It was the duty of the court to send for him and put him on trial. In addition to this it appears, from the agreed statement of facts, that the convict was in court as a witness during the term. This was sufficient notice to the court and the solicitor that he was confined in the chain-gang, even if such notice were necessary; and, as the State had full power to put the accused on trial, the failure to do so operated absolutely to discharge him from the felony indictment. This conclusion clearly results from previous decisions of the Supreme Court as well as of this court. *Judgment reversed.*